

FILED

OCT 26 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**TIMOTHY FEODOR KEARNEY, #1174098**

    **Petitioner,**

v.                                                                        **Civil No. 2:12CV240**

**HAROLD W. CLARKE,**
**Director, Virginia Department of Corrections,**

    **Respondent.**

### OPINION AND ORDER

Petitioner Timothy Kearney seeks a writ of habeas corpus to resolve alleged constitutional errors underlying his state convictions. The respondent moved to dismiss Kearney's petition, and the matter was referred to the undersigned United States Magistrate Judge on the parties' consent pursuant to 28 U.S.C. §§ 636(c), and Rule 73 of the Federal Rules of Civil Procedure. Because the Virginia decisions rejecting Kearney's claims are not based on any unreasonable determination of fact, or contrary to federal law, the Court will GRANT the respondent's motion and DISMISS the petition.

### I.       STATEMENT OF THE CASE

On March 17, 2008, following a bench trial, the Circuit Court of the City of Norfolk convicted Kearney of attempted robbery, armed statutory burglary, malicious wounding, two counts of abduction, and four counts of use of a firearm in the commission of a felony. (Petition,

1

ECF No. 1 at 2). The evidence at trial established that on the evening of July 30, 2005, Kearney, along with two other men, entered Nettille Jones' apartment and committed these crimes. (ECF No. 1-1 at 1-2). Nettille testified that three assailants wearing ski masks entered her bedroom and demanded, "Bitch, where's it at?" Id. at 2. Nettille was told to stay in the bedroom while another victim, Joseph Bowman, a/k/a "Slim," was taken away. Id. Nettille then heard a gunshot and jumped out of her bedroom window. Id. She returned approximately fifteen minutes later and found Bowman lying in the front doorway bleeding. Id. Barbara Jones, Nettille's mother, was also at the apartment and testified to substantially similar facts, though she recalled only seeing two men enter. Id.

Detective Couffman investigated the scene and found blood stains on glass fragments outside a broke kitchen window, as well as on the sidewalk and just inside the front door. Id. At trial, the Commonwealth presented certificates of analysis which indicated that the blood was Kearney's. Id. at 4. Additionally, on the same night as the break-in, Kearney was treated for severe lacerations to his arms at a Portsmouth hospital. Id. at 3. He told medical personnel and a detective that the he had been attacked by an unknown assailant with a broken beer bottle, but the detective's investigation of the location given by Kearney revealed no evidence suggesting an assault had occurred there (i.e., no blood or broken glass). Id. After he was arrested for the Jones break-in, Kearney made statements about his involvement to fellow inmates Tony Pugh and Alexander White. Id. at 3-4. Pugh testified that Kearney told him facts substantially similar to those which Nettille testified to, and that Kearney told him he had shot Bowman. Id. Pugh further testified that Kearney stated he, "jumped straight out [of] the [kitchen] window with his

arms over his face," because the front-door would not open. Id. at 4. White also testified that Kearney admitted to the crime, and that Kearney stated he went to a Portsmouth hospital to avoid detection in Norfolk. Id.

The Court sentenced Kearney to eighteen years in prison on the four counts of use of a firearm in the commission of a felony and suspended imposition of a sentence on the remaining convictions on the condition that Kearney be of good behavior for fifty years. (ECF No. 1 at 2). Kearney appealed to the Court of Appeals of Virginia challenging the sufficiency of the evidence for all counts, and claiming that the trial court erred in admitting certain evidence. (ECF No. 1-1 at 1). Specifically, he alleged that the trial court erred in admitting broken glass fragments from the crime scene as well as the blood samples found on the fragments. Id. In a per curiam opinion, the Court denied his appeal on the merits. Id. Kearney then appealed to the Supreme Court of Virginia, which refused his petition. (ECF No. 1 at 3; No. 1-3 at 1).

On April 22, 2011, Kearney filed a state habeas petition with the Supreme Court of Virginia. (ECF No. 1-3 at 1). Kearney alleged nine separate ineffective assistance of counsel claims, arguing his was counsel was ineffective by failing to:

(1) Object to the admissibility of cotton swabs and glass fragments on the grounds that chain of custody had not been established;

(2) Investigate and call "Sandra" as a witness;

(3) Argue that the trial court erred by applying the incorrect legal standard to Kearney's motion to strike;

(4) Request the appointment of an independent forensic expert to analyze evidence collected from the crime scene;

(5) Move to suppress his identification as being at the crime scene based on the evidence

3

and facts adduced;

(6) Conduct an investigation of "two jailhouse informants about conversations they had with the victims concerning the alleged incident";

(7) Investigate, subpoena or request discovery concerning "Dro" and other inmates who witnessed Kearney's conversations with Tony Pugh and Alexander White;

(8) Object on hearsay grounds when Barbara Jones testified that "Slim [Joseph Bowman] said, oh, I've been shot. I have been shot. Don't roll me over;" and

(9) Move to exclude Bowman's medical records on the grounds that their inclusion under the business records exception to hearsay violated Kearney's Sixth Amendment right to cross-examine witnesses.

(ECF No. 1-3). On January 18, 2012, the Supreme Court of Virginia dismissed Kearney's petition, finding that all nine allegations failed to satisfy the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). Id.

On April 27, 2012, Kearney, proceeding pro se, timely filed this federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. (ECF No. 1). In his federal petition, Kearney asserts eleven grounds for relief, the two raised on appeal to the Court of Appeals of Virginia and the nine raised in his state habeas petition. Id. On May 24, 2012, respondent filed its Rule 5 Answer and Motion to Dismiss, along with a brief in support. (ECF Nos. 5-7). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), Kearney was advised of his right to file opposing affidavits, statements, exhibits and legal memoranda, as well as the possible consequences of failing to oppose the respondent's filing. (ECF No. 8). He timely filed a reply, and therefore, respondent's Motion to Dismiss is ripe for judicial review.

## II. ANALYSIS

Habeas petitions filed pursuant to 28 U.S.C. § 2254 challenge a state's custody over a petitioner on the grounds that such custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before applying for federal habeas relief, however, a petitioner must first exhaust the remedies available in state court or demonstrate the absence or ineffectiveness of such remedies. 28 U.S.C. § 2254(b)(1). Therefore, before a state prisoner can apply for federal habeas relief, he must first give the state court an opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997); see Picard v. Connor, 404 U.S. 270, 275-76 (1971). Respondent concedes, and the Court agrees, that for purposes of federal review, Kearney's claims have been exhausted. (ECF No. 7 at 4).

Once a petitioner's state remedies have been exhausted, under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant relief on any claim adjudicated on the merits by the state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. §§ 2254(d)(1)-(2). A state court's decision is contrary to clearly established federal law if the court arises at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially

5

indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. Factual determinations made by a state court are "presumed to be correct," and a habeas petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Hill v. Ozmint, 339 F.3d 187, 194 (4th Cir. 2003).

## A. Ineffective Assistance of Counsel Claims

Kearney's first nine federal claims assert that he was denied the right to effective assistance of counsel. Specifically, Kearney asserts the same nine grounds as he did in his state habeas petition. (ECF No. 1 at 6-7; 9-27). All of these claims were resolved on the merits by the Supreme Court of Virginia. Thus, to obtain relief in this court Kearney must overcome the highly deferential standard set forth in § 2254(d).

In reviewing an ineffective assistance of counsel claim, the relevant inquiry is whether "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict suspect." Kimmelmann v. Morrison, 477 U.S. 365, 374 (1986). However, this presumption is not easily overcome, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 687.

In order for Kearney to succeed on his ineffectiveness claims, he must satisfy both the "performance" and the "prejudice" prongs of the two-part test set forth in Strickland v.

6

<u>Washington</u>, 466 U.S. at 687.[1] To satisfy the "performance" prong of the test, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687. To satisfy the "prejudice" prong of the test, petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.[2]

## 1. Ground 1

Kearney first asserts that his trial counsel was ineffective for failing to challenge the admissibility of cotton-tipped swabs and glass fragments found at the crime scene. He argues that chain of custody for the evidence was not proven, because neither item was sufficiently "unique and readily identifiable" for the trial court to reasonably conclude that no "substitutions, alternations or tampering had occurred." (ECF No. 1 at 9). He further alleges that counsel's true error was that counsel only objected to the admissibility of the glass fragments but not the cotton-tipped swabs, which barred him from arguing the admissibility of the swabs on appeal. <u>Id.</u> at 9, 13. Kearney asserts that had counsel challenged the admissibility of these items, they would not have been admitted and his identity would not have been established via DNA. <u>Id.</u> at 13. Thus, he argues that counsel's failure to challenge the admissibility of this evidence was unreasonable and prejudicial to his defense. <u>Id.</u> at 13.

The Supreme Court of Virginia considered this claim on the merits and found that it met neither the "performance" nor "prejudice" prong of the <u>Strickland</u> test. (ECF No. 1-3 at 2). The

---

[1] As both prongs of the test are "separate and distinct elements" of an ineffective assistance claim, Kearney must satisfy both requirements of the test to prevail on the merits. <u>Spencer v. Murray</u>, 18 F.3d 229, 232-33 (4th Cir. 1994); <u>see Strickland</u>, 466 U.S. at 697.
[2] The Supreme Court went on to define a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694; <u>Lovitt v. True</u>, 403 F.3d 171, 181 (4th Cir. 2005).

Court opined that two police officers and a forensic scientist's testimony "conclusively established the chain of custody from the officers' recovering the glass fragment and blood stains at the crime scene to the items being tested by the state forensic expert." Id. The Court also noted that counsel's cross-examination of Detective Couffman elicited that the detective did not have proof that the glass fragments in evidence came from the broken kitchen window. Id. The Court further observed that counsel "objected to the admission of the glass fragment on this basis and the trial court ruled that it went to the weight of the evidence." Id. Thus, Kearney's first claim of ineffective assistance of counsel failed.

This Court must only determine whether the Supreme Court of Virginia's decision on this point was either contrary to or an unreasonable application of federal law, or if its decision was based upon an unreasonable finding of facts. 28 U.S.C. §§ 2254(d)(1)-(2). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

There is no evidence that the Supreme Court's determination was unreasonable. Kearney's counsel vigorously cross-examined Detective Couffman and established that Detective Couffman had no proof that the glass fragment came from the broken kitchen window. Counsel further contested the relevance of the glass fragments due to this lack of proof but was overruled by the trial court. Kearney concedes that his blood was found on the glass fragment, and thus, it was reasonable for counsel not to object to the swabs once the glass fragment was admitted. (ECF No. 11 at 2-3 n.1). Moreover, since Detective Couffman, Investigator Scott Sergeant, and forensic scientist Ann Pollard's testimony clearly established a continual chain of

custody, counsel had no reasonable chain of custody objection available. Therefore, the Supreme Court's holding that counsel's performance was neither deficient nor prejudicial was entirely correct and not unreasonable. Accordingly, this claim is dismissed.

## 2. Ground 2

Kearney next contends that his counsel was ineffective for failing to investigate and call "Sandra," purportedly Nettille's cousin, as a witness. (ECF No. 1 at 13-15). Both Nettille and Barbara Jones testified that Sandra was at the apartment on the night of the crime but left a few minutes before the break-in. Id. at 15. Tony Pugh testified that Kearney told him a drunk woman, presumably Sandra, came from the apartment, and that Kearney and his co-assailants asked her if there was marijuana in the house to which she responded affirmatively before leaving. Id. at 14-15. Kearney asserts that his counsel acted unreasonably by not investigating Sandra to determine what she remembered and by not calling her to refute Pugh's testimony. Id. at 15.

The Supreme Court of Virginia addressed this claim and held that it satisfied neither prong of the Strickland test. (ECF No. 1-3 at 3). The Court reasoned that Kearney failed to clarify who "Sandra" was or allege what testimony she would have provided. Id. Thus, the Court found that Kearney had not demonstrated that counsel's performance was deficient or prejudicial. Id.

This ruling was not contrary to federal law nor based on an unreasonable finding of fact. Kearney has not asserted that trial counsel was aware of who Sandra was before trial. Nor has he shown in any habeas filing that Sandra would have been helpful to his defense. Specifically, Kearney has not proffered any facts to which Sandra would have testified, and which would have

9

strengthened his defense. Therefore, Kearney has failed to show that the Supreme Court of Virginia's decision was contrary to federal precedent, unreasonable, or based on a faulty determination of the facts. Thus, Kearney's second claim of ineffective assistance of counsel is dismissed.

**3. Ground 3**

Kearney's third claim asserts that trial counsel was ineffective for failing to argue that the trial court erred by applying the incorrect legal standard to his motion to strike. (ECF No. 1 at 15). Specifically, Kearney alleges that the trial court's application of the "in the light most favorable to the Commonwealth" standard to his motion to strike at the close of the evidence, but before a finding of guilt, was incorrect. Id. at 15-16. He contends the standard the trial court should have applied is that the accused is "presumed innocent until proven guilty beyond a reasonable doubt." Id. at 16. He further contends that his counsel's failure to challenge this application was unreasonable. Id. He argues that he was prejudiced by counsel's alleged errors, because his due process right to a presumption of innocence was violated. Id. The Supreme Court of Virginia addressed this claim on the merits and held that it did not satisfy either prong of the Strickland test, because the trial court applied the correct legal standard to Kearney's motion to strike. (ECF No. 1-3 at 4).

The Supreme Court's ruling was not unreasonable. The Supreme Court found that, under state law, the trial court applied the correct legal standard. Ordinarily, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999).

10

Moreover, as the trial court applied the correct legal standard, there was no basis upon which counsel could object, nor would an objection have been successful. Accordingly, the Supreme Court of Virginia's finding that Kearney's counsel was not ineffective for failing to raise the futile objection was not "objectively unreasonable," nor its finding of facts suspect. Claim three is dismissed.

### 4. Ground 4

Kearney's fourth claim alleges that trial counsel was ineffective for failing to "request appointment of an independent forensic expert" to analyze glass fragments, a Roca wear hat, shoe prints, and blood recovered from the crime scene to determine if any or all items could be traced to Kearney. (ECF No. 1 at 16-17). Kearney further asserts that counsel should have investigated or cross-examined the state forensic experts as to whether the aforementioned articles of evidence surfaced at the crime scene at the time of the crime or at some other remote time. (ECF No. 1 at 17).

The Supreme Court of Virginia addressed the claim on the merits and found that it satisfied neither prong of the two-prong Strickland test. (ECF No. 1-3 at 4). The Court first noted that Kearney failed to identify the evidence an independent examiner would have found through independent testing. Id. at 3-4. The Court further remarked that Kearney failed to "proffer an affidavit from the independent forensic expert to demonstrate what his testimony would have been had he been called to testify." Id. at 4. Therefore, the Court determined that counsel's performance was neither deficient nor prejudicial. Id.

There is no evidence that the Supreme Court's ruling was unreasonable or contrary to federal law. Kearney has still provided no evidence which suggests that counsel should have requested the appointment of an independent forensic expert. Moreover, Kearney himself has not even speculated what results independent testing would have revealed, or how its unavailability affected his trial. Thus, he has failed to even suggest that the state Court's holding was contrary to federal law, or based on unreasonably determined facts, and therefore, this claim is dismissed.

## 5. Ground 5

Kearney next argues that his trial was a "complete farce and mockery," because trial counsel was ineffective for failing to move to suppress his identification as a perpetrator present at the crime scene. (ECF No. 1 at 17). In sum, Kearney argues that there was insufficient evidence to prove he was at the crime scene, because: (a) Joseph Bowman did not come to court; (b) neither Nettille nor Barbara could identify him; and (c) the chain of custody linking his DNA to the blood was not established. Id. at 18. He further claims that Pugh and White's testimony was not credible, because they are persuasive liars with extensive criminal histories who had an incentive to testify falsely. Id. For these reasons, Kearney contends that it was unreasonable and prejudicial for his counsel to not "move to suppress [his] identification as a matter of law" based upon Neil v. Biggers, 409 U.S. 188 (1972).[3] The Supreme Court of Virginia considered this claim on the merits and held that it met neither prong of the Strickland test:

3 In Neil, the United States Supreme Court addressed whether a victim's in-court identification of the defendant violated due process due to prior showups, lineups, and photographic showings that the victim attended. 409 U.S. 193-201. The Court's primary concern was whether the pretrial showups were so suggestive that they created a "substantial likelihood of misidentification." Id. at 197. The Court held that though the pretrial showups were suggestive, the victim resisted the suggestiveness and her in-court evidence was properly allowed to go to trial, because there was no substantial likelihood of misidentification. Id. at 200-01.

12

> The record, including the trial transcript, demonstrates that the victims were unable to identify [Kearney] as one of the perpetrators. As such, [Kearney's] reliance on Neil v. Biggers is misplaced. Furthermore, counsel argued that the evidence was insufficient because the testimony of the witnesses was incredible, and the record further demonstrates that counsel challenged the DNA identification evidence and objected to its admissibility. [Kearney] fails to articulate a basis upon which counsel could have moved to suppress the DNA evidence. Thus, [Kearney] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(ECF No. 1-3 at 5-6). Thus, Kearney's claim of ineffective assistance of counsel failed. Id. at 6.

The Supreme Court's holding was not unreasonable. First, Kearney's reliance on Neil v. Biggers, which concerned misidentifications by witnesses or victims, is misguided, because neither Bowman, Nettille, nor Baraba identified Kearney as a perpetrator. More importantly, Kearney fails to address the strongest evidence placing him at the crime scene – his DNA found on the glass fragment. The record demonstrates that Kearney's counsel challenged the admission of the DNA evidence, but it is devoid of any facts which would support suppressing this evidence. Moreover, Kearney did not proffer – in state court or here – any facts upon which counsel could have moved to suppress the DNA evidence. Therefore, the Supreme Court's ruling was not unreasonable or contrary to federal precedent, nor based on a faulty determination of fact. Accordingly, this claim is dismissed.

### 6. Ground 6

Kearney's sixth claim asserts that counsel was ineffective for failing to investigate conversations inmates Pugh and White had with victims Nettille and Barbara concerning the robbery. (ECF No. 1 at 18). He alleges that Pugh and White had several conversations with the victims which influenced their testimony at trial. Id. at 20. He contends that, at a minimum,

13

counsel should have cross-examined Nettille and Barbara about the frequency and content of their conversations with Pugh and White. Id. at 20-21.

The Supreme Court of Virginia addressed the claim and found that it satisfied neither prong of the Strickland test. (ECF No. 1-3 at 6). The Court noted that Kearney did not describe what an investigation by counsel would have revealed. Id. The Court further highlighted counsel's cross-examination establishing that Pugh and White knew the victims, and his closing suggesting that these relationships affected their credibility. Id. Therefore, the Court denied Kearney's ineffective assistance of counsel claim. Id.

In this Court, Kearney again offers no evidence that the Supreme Court's ruling was unreasonable. Counsel inquired into the conversations on cross-examination and elicited that both Pugh and White knew the victims. Pugh testified that he was friends with Nettille's brother, Travis Jones, and admitted that he had a conversation with Barbara about the robbery after the offenses occurred. White testified that he had grown up with Nettille and they were friends, but said he had not talked to her nor Barbara since the break-in. Counsel's decision to cross-examine Pugh and White, rather than Nettille or Barbara, about their relationships and conversations was a sound trial strategy which is presumed reasonable. See Strickland, 466 U.S. at 689. Kearney has not proffered facts to suggest that either Nettille or Barbara would have testified differently. Thus, this claim is dismissed, because the Supreme Court's finding was not an unreasonable application of federal law, nor based on a faulty determination of facts.

**7. Ground 7**

Kearney next alleges that trial counsel was ineffective for failing to investigate, subpoena, or request discovery concerning an individual referred to as "Dro," or any other individuals who were present during Kearney's jailhouse conversations with Pugh and White. (ECF No. 1 at 19). At trial, White testified that Kearney told him and a few other inmates, one of whom was "Dro," about the Berkeley Avenue break-in. Kearney now contends that counsel should have investigated these other inmates to determine if they could impeach White's testimony. Id. The Supreme Court of Virginia addressed this claim on its merits and determined that it satisfied neither prong of the Strickland test, because Kearney did not "proffer an affidavit from 'Dro' or any other individuals that were housed with [him] to demonstrate what their testimony would have been had they been called to testify." (ECF No. 1-3 at 7).

The Supreme Court's holding was not unreasonable. There is no evidence in the Record that any other inmates were present during Kearney's jailhouse conversations with Pugh about the break-in. Rather, Kearney waited until the other inmate left before elaborating about the break-in to Pugh. Additionally, Kearney has not proffered any evidence or testimony the individuals who were present during the conversation with White may have offered had they been called to testify. Thus, Kearney has not shown that his counsel's performance was deficient nor prejudicial, and therefore, the Supreme Court's ruling to that effect was not contrary to federal precedent nor based on a faulty determination of the facts. Accordingly, this claim is dismissed.

## 8. Ground 8

Kearney's eighth claim contends that trial counsel was ineffective for failing to object to certain hearsay testimony. (ECF No. 1 at 21). At trial, victim Barbara testified: "Slim said, Oh, I've been shot. I have been shot. Don't roll me over." Id. Kearney argues that Barbara's testimony was hearsay, and thus contends that counsel should have objected to this testimony since Bowman (Slim) was not present in court to testify. Id. The Supreme Court of Virginia addressed this claim and found it satisfied neither prong of the Strickland test. (ECF No. 1-3 at 7). The Court found that the fact that Bowman had been shot was not in dispute, and further noted that the decision of whether to object to testimony is left to the discretion of counsel as a part of trial strategy. Id. at 7-8. Thus, Kearney's claim of ineffective assistance of counsel failed. Id. at 8.

The Supreme Court's finding was not unreasonable. Counsel's decision not to object to Barbara's testimony was a reasonable trial strategy in light of the issues at trial. That Bowman had been shot was clearly established at trial independent of Barbara's testimony. Moreover, the central issue of whether Kearney was the one who shot Bowman was not addressed by this part of Barbara's testimony, and it was not unreasonable for counsel to refrain from objecting. Therefore, Kearney has failed to show that the Supreme Court's finding was contrary to, or based on an unreasonable application, of federal law, or based upon a faulty determination of facts. Consequently, this claim must be dismissed.

## 9. Ground 9

Kearney next claims trial counsel was ineffective for failing to move to exclude Bowman's medical records on the ground that the admission of the records as evidence violated his Sixth Amendment right to confront the witnesses against him. (ECF No. 1 at 21). He contends that there were two levels of hearsay that violated the Confrontation Clause. Id. at 22. First, he argues that Bowman's statements to hospital personnel constituted testimonial hearsay, and thus claims counsel should have objected to their admissibility because Bowman was not present in court to testify. Id. at 23. Second, he contends that counsel should have objected and argued that the hospital records should not have been admitted under the business records exception, and therefore, did not bear "adequate indicia of reliability" for Confrontation Clause purposes. Id. at 24-25. Kearney supports this claim by arguing that the Commonwealth presented no evidence to establish that the records actually belonged to Bowman. Id. at 25-26. Finally, he contends that the records were testimonial in nature and were used to prove the truth of their contents. Id. at 26. The Supreme Court of Virginia considered this claim on the merits and found that it met neither prong of the Strickland test:

> The record, including the trial transcript, demonstrates that counsel objected to the admission of Mr. Bowman's medical records on the basis that the records constituted hearsay and because Mr. Bowman was not at trial. The court overruled the objection finding that the records were hearsay but that they fit the business records exception. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(ECF No. 1-3 at 8-9). Thus, Kearney's claim for ineffective assistance of counsel failed. Id.

The Record does not indicate that the Supreme Court's ruling was unreasonable. Rather, the Record clearly demonstrates that counsel objected to the admission of Bowman's medical records. In fact, counsel argued that the medical records constituted double hearsay and claimed the Commonwealth was only using the records because Bowman was not present to testify. The fact that the trial court overruled counsel's objection does not thereby make his performance ineffective. See Baires v. United States, 707 F. Supp. 2d 656, 668 (E.D. Va. 2010). Indeed, counsel did exactly what Kearney now claims he did not do. Therefore, since counsel's performance was neither deficient nor prejudicial, the Supreme Court's ruling was not an unreasonable application of federal law or based on a faulty determination of the facts. Accordingly, this claim is dismissed.

## B. Insufficiency of the Evidence Claim

Kearney also claims the evidence was insufficient to convict him on all counts. (ECF No. 2 at 13-18). An essential element of the right to due process is that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof-defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979) (discussing In re Winship, 397 U.S. 358 (1970)). Therefore, a petitioner who alleges that the evidence was insufficient to sustain a conviction has stated a constitutional claim cognizable in a federal habeas proceeding. Id. at 321.

In reviewing a sufficiency of the evidence claim, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). The reviewing court must consider circumstantial as well as direct evidence, and allow the prosecution the benefit of all reasonable inferences from the facts proven to those sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

In Jackson, the Supreme Court expressly recognized that its holding accorded "full play" to the responsibility of the fact-finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. Id. In Wright v. West, the Supreme Court expounded upon Jackson, stating:

> In Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of the constitutional sufficiency review. We said that "all of the evidence is to be considered in the light most favorable to the prosecution"; that the prosecution need not affirmatively "rule out every hypothesis except that of guilt"; and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

505 U.S. 277, 296-97 (1992) (emphasis in original) (internal citations omitted).

Kearney contends that the evidence is insufficient, because the trial court based its finding on contradictory testimony and DNA evidence which was not proven to have originated from the crime scene. (ECF No. 1 at 27). He argues that the testimony of Nettille and Barbara was inconsistent, because Nettille testified that there were three assailants while Barbara recalled only seeing two assailants. Id. at 30. He also notes that neither Nettille nor Barbara were able to identify him as an assailant. Id. at 31. He argues that Pugh and White's testimony was also inconsistent, because each testified to different versions of what Kearney divulged to them about the break-in. Id. at 30. Kearney further asserts that Pugh and White were not credible witnesses

19

due to their previous felony convictions, Pugh's previous misdemeanor convictions for lying, stealing, or cheating and their incentive to testify due to pending charges. Id. In sum, Kearney contends that these alleged discrepancies together with his claims about the relevance of the DNA evidence reveal that the Commonwealth's evidence was not sufficient to find him guilty beyond a reasonable doubt. The Court of Appeals of Virginia addressed this claim and held that[4]:

> Here, the inconsistencies in Nettille and Barbara's testimony, as well as that in the testimony by the inmates, were not so material that '"any rational trier of fact could [not] have found the essential elements of the crime beyond a reasonable doubt.'" On the contrary, the accounts given by the witnesses, including Pugh and White, were remarkably consistent and were corroborated in all material respects by the physical evidence. Even setting aside the evidence of appellant's DNA on the glass fragment, his blood was found on the sidewalk outside the kitchen window and inside the front door. Within an hour of the incident, appellant sought treatment for the cuts on his arms. Consistent with the testimony given by Pugh and White, appellant traveled to another area to obtain treatment. Appellant could not identify his alleged assailant, and when police investigated the site of his alleged assault, they saw no blood or broken glass, despite the fact appellant was bleeding profusely.
>
> As we cannot say the testimony of the witnesses was inherently incredible, the evidence was sufficient to support appellant's convictions.

(ECF No. 1-1 at 7) (internal citations omitted).

After reviewing the transcript of the trial and the opinion of the Court of Appeals, there was no unreasonable determination of fact, nor any unreasonable application of federal law in the Virginia Court of Appeals' analysis. At trial, Kearney had an opportunity to attack the credibility of the witnesses and did so. However, the trier of fact heard all of the evidence and

---

[4] Kearney raised this claim on his direct appeal. The claim was rejected on the merits on direct appeal to the Virginia Court of Appeals, and in a summary order, the Supreme Court of Virginia denied Kearney's appeal. Therefore, the Court of Appeals' decision on Kearney's direct appeal is the highest reasoned state court decision on this claim, and it is presumed that the Supreme Court of Virginia's denial of Kearney's appeal rests on the same grounds. See Roberts v. Johnson, 2:05CV331, 2006 WL 1881002 (E.D. Va. July 6, 2006) (citing Ylst v. Nennemaker, 501 U.S. 797, 804-06 (1991)) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.").

determined the credibility and consistency of the testimony. The trier of fact determined that though there were minor discrepancies in the witnesses' testimonies, the majority and core of the testimony was remarkably consistent. Additionally, the trial judge found that the strength of the DNA evidence on the glass fragment along with Kearney's medical treatment within an hour of the break-in confirmed that Kearney was present and committed the crimes. Kearney has not identified any testimony or evidence which he believes the Court overlooked. Viewing the evidence in the light most favorable to the Commonwealth, the Court of Appeals' finding that this evidence was adequate to sustain Kearney's conviction was not unreasonable, particularly given the "sharply limited nature of constitutional sufficiency review." Wright v. West, 505 U.S. at 296-97. Therefore, claim ten is dismissed.

### C. Evidentiary Claim

Kearney's final claim for federal habeas relief relates to the trial court's admission of the cotton-tipped swabs and glass fragment into evidence over his objection. (ECF No. 1 at 31). Kearney argues that neither should have been admitted, because there was not sufficient evidence to prove that the glass fragment with his DNA on it originated from the victim's broken window. Id. Kearney raised the issue on direct appeal. The Virginia Court of Appeals reviewed the merits of his claim and found it without merit. (ECF No. 1-1 at 5-6). Because the Court of Appeals reviewed the merits and denied the claim, the Supreme Court of Virginia's refusal of Kearney's direct appeal satisfies the exhaustion requirement for this claim. See Sanders v. Reynolds, 214 Va. 697, 700; 204 S.E.2d 421, 424 (1974) (refusal of petition satisfies exhaustion for habeas purposes).

Nevertheless, claim eleven states no basis for a federal habeas relief, as it relates solely to a state court's application of state law. Ordinarily, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999). When a petitioner's claim rests solely on an interpretation of state law and statutes, it is not cognizable on federal habeas review. Specifically, state court rulings on the admissibility of evidence are not ordinarily subject to review in federal habeas proceedings unless they present some constitutional claim. Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992); Buel v. Mitchell, 274 F.3d 337, 357 (6th Cir. 2001).

In this case, Kearney has not alleged any federal constitutional dimension to the trial court's admission of the cotton-tipped swabs and glass fragment into evidence. The legal arguments made in the federal petition, and the Court of Appeals' opinion analyzing the merits of the claim on appeal, both relate exclusively to Virginia evidentiary law. Because the trial court's application of Virginia law in this case presents no challenge to the fundamental fairness of Kearney's trial, claim eleven is not cognizable in federal habeas relief and is thus dismissed.

Moreover, even if the evidentiary challenge presented could be considered to implicate due process protection, the Court finds that the Court of Appeals' resolution of the claim was not contrary to federal precedent, nor based on an unreasonable application of federal law, or determination of fact.

22

## III. CONCLUSION

For these reasons, Respondent's Motion to Dismiss is GRANTED.

Petitioner is ADVISED that he may appeal from the judgment entered pursuant to this

Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States

District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia, 23510. Written notice

must be received by the Clerk within thirty (30) days from the date of this Dismissal Order. For

the reasons stated above, the Court, pursuant to Rule 22(b) of the Federal Rules of Appellate

Procedure, declines to issue a certificate of appealability.

The Clerk is DIRECTED to mail a copy of this Order to all counsel of record.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

October 26, 2012